# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| LOHR *et al.*, | ) CASE NO. 1:11-cv-2198 |
| Plaintiffs, | ) |
| | ) MAGISTRATE JUDGE |
| v. | ) NANCY A. VECCHIARELLI |
| | ) |
| UNITED STATES STEEL CORPORATION, | ) |
| | ) **MEMORANDUM OPINION AND** |
| Defendant. | ) **ORDER** |

This case is before the undersigned United States Magistrate Judge upon the consent of the parties. Before the Court is the motion for summary judgment filed by Defendant, United States Steel Corporation ("U.S. Steel"). (Doc. No. 23.) Plaintiffs Dennis Lohr ("Dennis Lohr") and Sharyn Lohr ("Sharyn Lohr") (collectively "Plaintiffs") oppose. (Doc. No. 33.) For the reasons set forth below, U.S. Steel's motion for summary judgment is GRANTED.

## I. BACKGROUND

### A. Factual Background

The following material facts are not disputed unless otherwise indicated. In 2010, U. S. Steel was in the process of rehabilitating a building known as the "CW Building" ("the Building") to install a Quench and Temper facility. (David Kasprovich Aff. ¶ 2, Doc. No. 23-1 at 1.) The Building was a decades-old warehouse at that time. (Kasprovich Aff. ¶ 3; Dennis Lohr Dep. 29:4, Jan. 26, 2012, Doc. No. 23-2.) U. S. Steel hired Niles Industrial Services, LLC ("Niles Industrial") as an independent contractor to participate in the rehabilitation, which included washing and painting the Building. (Ryan Niles Aff. ¶ 7, Doc. No. 23-2 at 2; Kasprovich Aff. ¶¶ 5-6; Blanket Envtl. Agreement, Doc. No. 23-1 at 7.) Niles Industrial hired Dennis Lohr to work on the Building as a painter. (Dennis Lohr Dep. 27:3-4; *see* Ron Zugel Aff. ¶¶ 6-8, Doc. No. 23-4 at 2.)

Niles Industrial's bid for the contract indicated that the scope of Niles Industrial's work on the interior of the Building included to "[c]over and protect all items, surfaces, and equipment not to receive new paint," and, "[a]fter surfaces are protected, . . . clean all surfaces to receive paint by using hot water to wash down loose dust, paint, chips and debris." (Kasprovich Aff. ¶ 13; Niles Indus. Bid, Doc. No. 23-1 at 37.) The contract between U.S. Steel and Niles Industrial provided that "[t]he safety of the persons employed by [Niles Industrial] and its subcontractors on [U.S. Steel's] premises, and/or any other person who enters upon [U.S. Steel's] premises for reasons relating to Work performed during the term of and governed by this Agreement shall be

2

the sole responsibility of [Niles Industrial]."  (Blanket Envtl. Agreement § 14.1.)  Niles Industrial was required to "take all reasonable measures and precautions at all times to prevent injuries to or death of any of its employees or any other person who enters upon [U.S. Steel's] property" in relation to Niles Industrial's work.  (Blanket Envtl. Agreement § 14.2.)

Niles Industrial also agreed that it would comply with U.S. Steel's "Standard Specification S-001" ("the Specification").  (Blanket Envtl. Agreement § 14.6.)  The Specification provided that "Contractor[,] by performing work and/or services on U.S. Steel premises[] either pursuant to a formal contract, agreement or purchase order, assumes complete responsibility for the safe performance of such work and/or services in compliance with the provisions of this Specification and the safety requirements as specified in such contract, agreement or purchase order as applicable."  (Specification § 1.1.1, Doc. No. 23-1 at 54.)  The Specification continues as follows:

- "The Contractor, with respect to work and/or services performed at U.S. Steel facilities/premises, has the obligation or responsibility to ensure the safety and health of its employees, agents and invitees and of other affected persons working at such U.S. Steel facilities/premises. It is Contractor's sole responsibility to ensure a safe work environment for its employees, agents and invitees."  (Specification § 1.1.2.)

- "The safety of the persons employed by Contractor and its subcontractors on U.S. Steel's premises, and/or any other person who enters upon U.S. Steel's premises for reasons relating to the Contractor's performance of work and/or services covered by this Specification shall be the sole responsibility of the Contractor.  The Contractor is solely responsible for the supervision and training of his employees while on U.S. Steel premises."  (Specification § 1.2.)

- "Contractor acknowledges it is the Contractor's duty to ensure that places of employment be free from recognized hazards and unsafe conditions causing, or likely to cause, death or serious physical or material harm.  Contractor acknowledges that the sole responsibility for

3

- "the safety of the Contractor's employees and for compliance with the Occupational Safety and Health Act of 1970 . . . and any other federal, state or local laws, rules and regulations regarding such employees rests with the Contractor." (Specification § 1.5.1.)

- "At a minimum, the Contractor will inspect the work area daily at the beginning and at the end of each work shift to ensure safe working conditions (i.e., stable shoring, safe access and egress, proper housekeeping, any flames are extinguished, etc.)." (Specification § 4.2.)

Ron Zugel, Niles Industrial's "Job Superintendent" at the Building, "was aware that prior to doing any work within the . . . Building . . . one of the duties of Niles Industrial was to inspect the area where work was to be performed." (Ron Zugel Aff. ¶¶ 1, 4.)

The Specification also provided rules regarding energization, de-energization, and connection to utilities on the work site:

- "Contractor's employees will not open or close any utility lines. Operation of any valves or switches will be completed by the responsible Operating Department unless authorized by a written procedure signed by the U.S. Steel Plant Manger." (Specification § 4.11.1.4.)

- "Contractors shall consult with a public utility representative and/or the applicable U.S. Steel representative before working on or around high voltage, electric wires, or power circuits." (Specification § 4.11.2.1.)

On September 14, 2010, Niles Industrial participated in a contractor safety lineup meeting wherein Niles Industrial was put on notice that power would be maintained in certain areas of the Building while Niles Industrial performed its washing and painting. (Kasprovich Aff. ¶ 21; Zugel Aff. ¶¶ 2-3; Ryan Niles Aff. ¶¶ 3-4.)

On October 4, 2010, Ron Zugel held a meeting with U.S. Steel and Niles Industrial employees, including Dennis Lohr, and informed everyone that the hazards on the job site included electrical shock. (Zugel Aff. ¶¶ 5-7; *see also* Kaspovich Aff. ¶

23; Dennis Lohr Aff. ¶ 4, Doc. No. 33-1 at 11.) Dennis Lohr alleges that a U.S Steel employee also led the meeting. (Dennis Lohr Aff. ¶ 4.) Niles Industrial employees were instructed, in part, to look for any wires that were not covered. (Kaspovich Aff. ¶ 25.) Workers were required to wear hard hats, safety glasses, and work boots. (*See* Kaspovich Aff. Ex. H, Doc. No. 23-1 at 104-105.)

The same day, Dennis Lohr was instructed by his foreman to power wash the catwalk near the ceiling of the Building. (Dennis Lohr Dep. 27:2-13; Dennis Lohr Aff. ¶ 2.) Dennis Lohr alleges the following. He was electrocuted while power washing and was knocked down on the catwalk. (Dennis Lohr Dep. 28:16-25, 31:20-32:5; Dennis Lohr Aff. ¶ 2.) He thereafter descended the catwalk and reported the incident to the foreman. (Dennis Lohr Dep. 32:3-12, 37:25-38:2; Dennis Lohr Aff. ¶ 8.) Upon returning to and inspecting the area around the catwalk, he discovered three large wires "taped up" and running along a beam, portions of which lacked rubber insulation. (Dennis Lohr Dep. 38:6-10; Dennis Lohr Aff. ¶ 9.) Dennis Lohr did not see the wires because there were no lights near the ceiling of the Building, it was dark in that location, and the wires were concealed by the beam. (Dennis Lohr Dep. 38:10-13.)

U. S. Steel had stopped all operations within the Building prior to October 2010 and had no active operations in the Building on October 4, 2010. (Kasprovich Aff. ¶ 4, Doc. No. 23-1 at 2.) Nevertheless, Dennis Lohr alleges that, prior to October 4, 2010, he occasionally observed U.S. Steel electricians go ahead of him and check for live wires to ensure that the work area was safe for the power washers and painters; and that he assumed the work area was safe. (Dennis Lohr Aff. ¶ 5.) He further alleges that he relied on the U.S. Steel electricians to ensure that the work area was safe.

(Dennis Lohr Aff. ¶ 12.) At the time Dennis Lohr allegedly was electrocuted, however, no one from U.S. Steel was present at the work site. (*See* Zugel Aff. ¶ 2.)

### B.     Procedural Background

On February 29, 2012, Plaintiffs filed an amended complaint and claimed that U.S. Steel, United States Steel Corporation Lorain Tubular Operations, Worley Parsons, and Robert J. Edwards negligently caused Dennis Lohr to be electrocuted. (Doc. No. 21.) Plaintiffs are spouses, and they also claimed that U.S. Steel's and/or United States Steel Corporation Lorain Tubular Operations' alleged negligence caused Sharyn Lohr to suffer loss of consortium.

On March 19, 2012, U.S. Steel filed its motion for summary judgment.[1] (Doc. No. 23.) U.S. Steel essentially argues that it did not owe a duty of care to Dennis Lohr to make his work environment safe from the danger of electrocution; and that Sharyn Lohr's claim for loss of consortium fails because it is derivative of the claim for negligence and the claim for negligence fails.

On May 17, 2012, Plaintiffs filed their response in opposition to summary judgment. (Doc. No. 33.) On May 29, 2012, upon Plaintiffs' motion, the Court dismissed Worley Parson and Robert J. Edwards from this action without prejudice. (Order 05/29/12.) On May 30, 2012, U.S. Steel filed its reply to Plaintiffs' response. (Doc. No. 35.)

---

[1] U.S. Steel indicated in its answer to Plaintiffs' amended complaint (Doc. No. 22) and in its motion that there was no such entity by the name of "United States Steel Corporation Lorain Tubular Operations." Plaintiffs have not argued otherwise, and the docket was corrected to reflect that U.S. Steel and "United States Steel Corporation Lorain Tubular Operations" are the same party.

6

## II. LAW & ANALYSIS

### A. Standard of Review

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party can meet this burden in two ways: by presenting sufficient evidence to indicate there is no genuine issue of material fact; or by arguing that the nonmoving party, after adequate time for discovery, fails to show sufficient evidence to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Once the moving party has met its burden, the nonmoving party may not rest upon the mere allegations or denials of its pleadings, but must produce evidence that results in a conflict of material fact to be resolved by a jury. See Cox v. Ky. Dep't of Transp., 53 F.3d 146, 149 (6th Cir. 1995). The court is not required to search the entire record to establish that it is bereft of a genuine issue of material fact. Al-Qudhai'een v. Am. W. Airlines, Inc., 267 F. Supp. 2d 841, 845 (S.D. Ohio 2003) (quoting Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479-80 (6th Cir. 1989)). The nonmoving party has an affirmative duty to direct the court's attention to specific evidence upon which it seeks to rely. Id. (citing In re Morris, 260 F.3d 654, 665 (6th Cir. 2001)).

In reviewing summary judgment motions, a court must view the evidence in a light most favorable to the nonmoving party to determine whether a genuine issue of material fact exists. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Pachla v.

*Saunders Sys., Inc.*, 899 F.2d 496, 498 (6th Cir. 1990).  In addition, the Court does not weigh the evidence or make credibility determinations.  *Joostberns v. U. Parcel Servs., Inc.*, 166 F. App'x 783, 787 (6th Cir. 2006).  The determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986).

The mere existence of a scintilla of evidence in support of the nonmoving party's position will be insufficient to defeat a motion for summary judgment; there must be evidence on which the jury could reasonably find for the nonmoving party.  *Id.* Ultimately, the court should determine whether the evidence presents a sufficient disagreement to require submission to a jury, or whether it is so one-sided that one party must prevail as a matter of law.  *Anderson*, 477 U.S. at 251-52.

### B.  Plaintiffs' Claims of Negligence and Loss of Consortium

A federal court sitting in diversity must apply the substantive law of the forum state.  *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938); *Talley v. State Farm Fire & Cas. Co.*, 223 F.3d 323, 326 (6th Cir. 2000).  To establish negligence, a plaintiff must show that the defendant owed a duty of care to the plaintiff; the defendant breached that duty; and that the breach proximately caused the plaintiff's alleged injury.  *See Mussivand v. David*, 45 Ohio St. 3d 314, 318, 544 N.E.2d 265, 270 (Ohio 1989).  The existence of a duty is a question of law for the court to determine.  *Id.*, 544 N.E.2d at 270.

Ohio Revised Code Sections 4101.11 and 4101.12 set forth the general rule regarding the duty that an employer of an independent contractor owes to the

employees of the independent contractor. *Frost v. Dayton Power & Light Co.*, 138 Ohio App. 3d 182, 189, 740 N.E.2d 734, 740 (Ohio Ct. App. 2000). The statutes generally require employers to provide employees and frequenters (including employees of independent contractors) with a safe place to work.[2] *Id.*, 740 N.E.2d at 740. The duty set forth in the statutes generally does not, however, apply when the independent contractor (1) engages in inherently dangerous work, and (2) knows or appreciates that a degree of danger surrounds the performance of the task for which he was hired. *Id.*

---

[2] Section 4101.11 provides the following:

> Every employer shall furnish employment which is safe for the employees engaged therein, shall furnish a place of employment which shall be safe for the employees therein and for frequenters thereof, shall furnish and use safety devices and safeguards, shall adopt and use methods and processes, follow and obey orders, and prescribe hours of labor reasonably adequate to render such employment and places of employment safe, and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees and frequenters.

Ohio Rev. Code § 4101.11. Section 4101.12 provides the following:

> No employer shall require, permit, or suffer any employee to go or be in any employment or place of employment which is not safe, and no such employer shall fail to furnish, provide, and use safety devices and safeguards, or fail to obey and follow orders or to adopt and use methods and processes reasonably adequate to render such employment and place of employment safe. No employer shall fail to do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees or frequenters. No such employer or other person shall construct, occupy, or maintain any place of employment that is not safe.

Ohio Rev. Code § 4101.12. These statutes merely codify the common-law duty owed by an owner or occupier of premises to invitees, requiring that the premises be kept in a reasonably safe condition, and that warning be given of dangers of which he has knowledge. *Eicher v. U.S. Steel Corp.*, 32 Ohio St. 3d 248, 249, 512 N.E.2d 1165, 1167 (Ohio 1987).

9

at 190-91, 740 N.E.2d at 740-41.

Here, Dennis Lohr's work qualifies as "inherently dangerous work" for purposes of determining whether U.S. Steel owed Dennis Lohr any duty of care in relation to his work.  See id. at 199, 740 N.E.2d at 747 (collecting cases and concluding that "appellant's task, painting in a commercial, industrial setting where hard hats are required, involved inherent dangers of which appellant knew or should have known").  Further, it is undisputed that Dennis Lohr knew and appreciated that electrical shock was one of the dangers on the work site for which precautions were required.

But the rule of nonliability will not apply to the owner or occupier of the premises if it "actively participates" in the independent contractor's work.  Id. at 192, 740 N.E.2d at 742.  Active participation giving rise to a duty of care may exist where a property owner either directs or exercises control over the work activities of the independent contractor's employees, or where the property owner retains or exercises control over a critical variable in the workplace.  Sopkovich v. Ohio Edison Co., 81 Ohio St. 3d 628, 643, 693 N.E.2d 233, 243 (Ohio 1998).  Although a distinction exists between control over the work activities of an independent contractor's employees and control over the work area, a property owner's liability under the active participation doctrine can attach under either or both circumstances.  Barnett v. Beazer Homes Invs., LLC et al., 180 Ohio App. 3d 272, 279, 905 N.E.2d 226, 231 (Ohio Ct. App. 2008).

U.S. Steel emphasizes that it ceased its operations in the Building prior to October 2010 and had no active operations in the Building at the time Dennis Lohr allegedly was injured.  U.S. Steel offers a great deal of evidence that shows it did not

10

direct or exercise control over Dennis Lohr's work activities, and that Niles Industrial had control of the premises.  Therefore, it is Plaintiffs' burden to show there is a genuine issue of material fact that U.S. Steel "actively participated" in Niles Industrial's and Dennis Lohr's work.

Plaintiffs point to Specification sections 4.11.1.4 and 4.11.2.1 regarding "energization" and argue that U.S. Steel "did in fact retain care, custody, and control of the electrical energization [of the Building] and did not transfer care, custody, and control of de-energization."[3]  (Pls.' Response 2.)  Plaintiffs essentially argue that U.S. Steel actively participated in Dennis Lohr's work because it retained control over a critical variable in the workplace.  Energization and de-energization of electrical power lines in a facility in which work is being performed may constitute a critical variable in the workplace.  *See* [Sopkovich, 81 Ohio St. 3d at 643, 693 N.E.2d at 244](#) ("Ohio Edison did, however, retain and exercise exclusive control over a critical variable in the working environment, *i.e.*, the de-activation of specific electrical conductors in the work area."); [Barnett, 180 Ohio App. 3d at 280, 905 N.E.2d at 232](#) (finding that reasonable minds could disagree whether the defendant exercised or retained control over a critical variable in the work environment—namely, the de-energization of a power line).

But even if U.S. Steel retained control over energization, the duty would not be absolute; rather, in the absence of any evidence to the contrary, the duty would be limited to the tasks of energization and de-energization.  *See* [Sopkovich, 81 Ohio St. 3d](#)

---

[3] U.S. Steel contends that Plaintiffs should not be permitted to rely on the Specification because they did not properly authenticate it in their response.  U.S. Steel overlooks the fact that it supplied the same Specification in support of its motion.

11

at 643, 693 N.E.2d at 244.  Plaintiffs have adduced no factual evidence of the circumstances surrounding Dennis Lohr's alleged electrocution relating to energization—for example, there is no evidence of whether Niles Industrial inspected the work area, whether Niles Industrial or Dennis Lohr requested U.S. Steel to de-energize the electrical power, whether U.S. Steel failed to de-energize the electrical power upon request, or the circumstances under which U.S. Steel was required to de-energize the work area.  Plaintiffs have not introduced any evidence that shows the relevance of the energization provision to the specific facts and circumstances of this case.  In other words, Plaintiffs have failed to adduce sufficient evidence to rebut U.S. Steel's evidence and permit a jury to reasonably conclude that U.S. Steel had any duty related to energization under the circumstances, or that U.S. Steel breached any such duty.

>Plaintiffs also assert that Dennis Lohr's affidavit shows:
>
> - "[I]n matters concerning energy it is a US Steel employee who led the safety meeting."
>
> - "It is U.S. Steel electricians who preceded Plaintiff to assure that it was safe for power washers and painters to perform their employment obligations."
>
> - "US Steel personnel admitted to Plaintiff that their electricians had missed the wires hidden behind the beams where [Plaintiff] was power washing."
>
> - "Plaintiff relied upon US Steel electricians to assure that the worksite was safe."

(Pl.'s Response 3-4.)

Dennis Lohr's affidavit, assumptions, and reliance do not show that U.S. Steel controlled a critical variable in the workplace or that U.S. Steel directed or controlled

12

Dennis Lohr's work activities, given the undisputed terms of the contract between U.S. Steel and Niles Industrial.  The affidavit is insufficient to establish a genuine issue of material fact for several reasons.  First, Dennis Lohr does not aver that U.S. Steel electricians preceded him on the day he allegedly was electrocuted.  Second, he does not aver that any U.S. Steel employee "assured" him the work area was safe, and he does not provide any basis to conclude that U.S. Steel agreed or had an obligation to "assure" him of the safety of the premises.  In addition, his personal reliance is not relevant unless he had a reason to rely in spite of the contract, and he presents no basis for reliance.  Any statement by U.S. Steel personnel that they "missed" wires does not show that U.S. Steel owed a duty toward Dennis Lohr.  To the extent any U.S. Steel employees were present for general supervisory purposes, such supervision does not rise to the level of active participation.  See [Cafferkey v. Turner Constr. Co., 21 Ohio St. 3d 110, 113, 488 N.E.2d 189, 192 (Ohio 1986)](#).  In short, the facts alleged are insufficient to rebut U.S. Steel's evidence and permit a jury to reasonably conclude U.S. Steel actively participated in Niles Industrial's or Dennis Lohr's work.

Additionally, Plaintiffs have utterly failed to defend their claim for loss of consortium; and as their claim for loss of consortium is derivative of their claim for negligence, it, too, fails.  See [Lynn v. Allied Corp., 41 Ohio App. 3d 392, 402, 536 N.E.2d 25, 36 (Ohio Ct. App. 1987)](#).  Accordingly, U.S. Steel's motion for summary judgment is granted.

### III.    CONCLUSION

For the foregoing reasons, U.S. Steel's motion for summary judgment is

13

GRANTED.

       **IT IS SO ORDERED**.

                                                        s/ *Nancy A. Vecchiarelli*
                                                        U.S. Magistrate Judge

Date:  August 14, 2012